OPINION OF THE COURT
Alexander W. Hunter, Jr., J.
Defendants North Shore-Long Island Jewish Medical Center, North Shore-Long Island Jewish Health System, Inc., North Shore-Long Island Jewish Medical Care, PLLC, and North Shore-Long Island Jewish Medical Group’s (collectively, Hospital) motion for an order pursuant to CPLR 3212, granting summary judgment against plaintiffs, is granted as to plaintiffs’ statutory claim only. Plaintiffs’ cross motion for an order pursuant to CPLR 3212, granting summary judgment against defendants, is denied.
Plaintiffs seek to recover for emotional injuries sustained as a result of defendants’ mishandling and unauthorized possession of plaintiffs’ decedent’s body. The decedent, James Turner, died at Long Island Jewish Medical Center on December 28, 2011 at the age of 89. Plaintiff Shatima Turner (Shatima) was selected by her family to handle the funeral arrangements. (Shatima off H 4.) On December 28, 2011, plaintiff Shatima went to defendant Owens Funeral Home, Inc. (Owens Funeral Home) to discuss the possibility of having it handle the funeral arrangements and a written proposal was prepared. The proposal required the written signature of the person making the arrangements to authorize the retrieval of the decedent’s body. (Plaintiffs’ exhibit H.) Shatima did not sign this proposal. On December 29, 2011, Shatima went to Unity Funeral Chapel Inc. (Unity) to discuss potential alternative funeral plans and *446 secured. Unity’s services. (Shatima off II10.) When Unity called defendant Hospital to arrange to pick up the decedent’s remains, Unity learned that the body had already been released to Andrew Cleckley, a registered resident at Owens Funeral Home, on December 30, 2011. Mr. Cleckley presented a certification to defendant Hospital indicating that he had the authority to take possession of the decedent’s body. Mr. Cleckley also signed defendant Hospital’s Registration and Removal of Deceased form (the Release Form) and the Release of Expirations form. On December 31, 2011, Unity had Mr. Cleckley transport the decedent’s body to its funeral home. Once at Unity, it was discovered that the decedent’s body had been embalmed and that there was damage to the right ear and eyelid of the body. This embalming was not authorized.
Defendant Hospital argues that it is entitled to summary judgment on the grounds that plaintiffs’ claims are without merit and present no triable issues of fact. Defendant Hospital argues that it acted with due care and followed all applicable laws and its internal policies in releasing the decedent’s body to Owens Funeral Home. Moreover, defendant Hospital asserts that it is shielded from liability by Public Health Law § 4201 (6) because it acted “reasonably” and in “good faith.” Defendant Hospital argues that it is not liable for any damage or mistreatment of the decedent’s body after its release. Mr. Cleckley of Owens Funeral Home certified that he had Shatima’s authority to take possession of the decedent’s remains, and this alone insulates defendant Hospital from any liability.
Defendant Hospital submits the sworn affidavit of Kathleen Barrett, admitting clerk at Long Island Jewish Medical Center, confirming that she obtained a certification from Mr. Cleckley that he had authority from Shatima to take possession of the decedent’s body, and that she verified Mr. Cleckley’s valid New York State funeral director’s license. (Barrett off 1Í1Í 8, 9.) Although she failed to mark the box which reads “License verified,” Ms. Barrett attests that she did in fact verify Mr. Cleckley’s registered license by its number because it is written on the Release Form. (Barrett off H 9.)
Plaintiffs argue that defendant Hospital’s motion for summary judgment should be denied and cross-move for summary judgment. Plaintiffs allege that defendant Hospital interfered with their right to immediate possession of the decedent’s body for preservation and burial; improperly released the body of the decedent to unauthorized persons; and caused plaintiffs to *447 postpone decedent’s funeral service. (Affirmation of defendant Hospital’s counsel, exhibit D, 1i 6.) Plaintiffs further argue that defendant Hospital failed to meet its burden of establishing the absence of a triable issue of fact. Plaintiffs aver that the admitting clerk’s assertion that she verified Mr. Cleckley’s funeral director’s license is patently false. Mr. Cleckley is a registered resident, and therefore, his nonexistent funeral director’s license could not have been verified.
Plaintiffs also argue that Public Health Law § 4201 offers defendant Hospital no protection from civil liability because a “person” as defined by the statute is a natural person 18 years or older, and the only organizations afforded protection from civil liability are cemetery organizations, businesses operating a crematory or columbarium, funeral directors, undertakers, embalmers, or funeral firms. Defendant Hospital does not fall within these definitions.
In her affidavit, Shatima asserts that she specifically told Owens Funeral Home that she would not sign the proposal because she had to speak to her family before making a final decision. (Shatima off H 9.) The original chapel that was planned for the decedent’s funeral would not allow Shatima and her family to use the chapel for the funeral service because Shatima had not let Owens Funeral Home keep the decedent’s body. (Shatima off 1Í17.) A funeral service at a new chapel had to be scheduled last minute and announcements of the change had to be done by telephone because the funeral announcements had already been sent. (Shatima off 1Hi 18, 19.)
Plaintiffs also submit the affidavit of Duval H. Naughton, the funeral director for Unity, which reiterates the sequence of events set forth in Shatima’s affidavit.
In reply, defendant Hospital argues that it is not responsible for mutilation and damage to the decedent’s body and without deposition testimony or substantive discovery, there is no factual basis to delineate how defendants caused the alleged mutilation. Defendant Hospital confirmed with the Director of the New York State Bureau of Funeral Directing that Mr. Cleckley was a registered resident when he took possession of the decedent’s body on December 30, 2011. Defendant Hospital also confirmed with the New York State Bureau of Funeral Directing that 10 NYCRR 77.7 (h) does not require direct supervision of a registered resident by a funeral director, and thus Mr. Cleckley was authorized to take possession of the decedent’s body. Therefore, defendant Hospital reiterates that it did not violate any applicable regulations in releasing the body.
*448 It is well established that summary judgment is a drastic remedy that should not be granted where there is any doubt as to the existence of a triable issue of fact. (Rotuba Extruders v Ceppos, 46 NY2d 223 [1978]; Andre v Pomeroy, 35 NY2d 361 [1974]; CPLR 3212 [b].) The court’s function on a motion for summary judgment is issue finding rather than issue determination. (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395 [1957].) For summary judgment to be granted, the moving party must establish his or her cause of action or defense by presenting evidentiary proof in admissible form that would be sufficient to warrant the court in directing judgment in favor of the moving party. (Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065 [1979].) Where the moving party fails to make such a showing, the motion must be denied regardless of the sufficiency of the opposition papers. (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851 [1985].) Once the movant has made this showing, the burden shifts to the party opposing the motion to produce evidentiary proof in admissible form sufficient to establish the existence of a material issue of fact that would require a trial of the action. (Alvarez v Prospect Hosp., 68 NY2d 320 [1986]; Zuckerman v City of New York, 49 NY2d 557 [1980].)
10 NYCRR 77.7 (b) reads in pertinent part that
“[i]n no case shall a dead human body be released from any hospital ... to any person not a duly licensed and registered funeral director or undertaker or a registered resident. . .
“[and the hospital] shall request the person seeking to obtain the release of said body ... to produce his/her current certificate of registration, showing that he/she is personally entitled to practice as a funeral director, undertaker or as a registered resident.”
10 NYCRR 405.9 (f) (9) reads in pertinent part that “[a] dead body . . . shall be delivered only to a licensed funeral director or undertaker or his/her agent.”
Defendant Hospital has made a prima facie showing of entitlement to summary judgment on plaintiffs’ statutory cause of action. The evidence submitted demonstrates that Mr. Cleckley was a registered resident with a valid license. The fact that the “License verified” box on the Release Form was left unmarked is of no consequence since the license number was written on the tracking forms, indicating that a license was indeed verified. In opposition, plaintiffs have failed to raise a *449 triable issue of fact to preclude summary judgment. This court finds that defendant Hospital complied with all applicable regulations when it released the decedent’s body to Mr. Cleckley.
The common-law right of sepulcher gives a party thus entitled “the absolute right to the immediate possession of a decedent’s body for preservation and burial, and . . . damages will be awarded against any person who unlawfully interferes with that right or improperly deals with the decedent’s body.” (Melfi v Mount Sinai Hosp., 64 AD3d 26, 31 [1st Dept 2009]; see Darcy v Presbyterian Hosp. in City of N.Y., 202 NY 259 [1911].) A claim based on a violation of the right of sepulcher is designed to compensate the party “for the emotional suffering and mental anguish which they experience from the interference with their ability to properly bury their decedent.” (Shipley v City of New York, 80 AD3d 171, 177 [2d Dept 2010]; see Melfi at 32, 36-37.) “The likelihood of emotional injury is deemed so inherently genuine in such cases that neither proof of the plaintiffs’ accompanying physical harm nor of a specific medical diagnosis and course of treatment is essential to a successful prosecution of the claim.” (Shipley at 177; see Johnson v State of New York, 37 NY2d 378, 381-382 [1975].) To succeed on a common-law right of sepulcher claim, plaintiff must establish that (1) plaintiff is the decedent’s next of kin; (2) plaintiff had a right to possession of the remains; (3) defendant interfered with the plaintiffs right to immediate possession of decedent’s body; and (4) the interference has caused mental anguish, which is generally presumed. (See Melfi, 64 AD3d 26 [2009]; Shipley, 80 AD3d 171 [2010].)
 This court finds that neither defendant Hospital nor plaintiffs have made a prima facie showing of entitlement to summary judgment as a matter of law as to plaintiffs’ common-law cause of action. Defendant Hospital cites to Melfi and stresses that it did not interfere with plaintiffs’ right of sepulcher because it did not (1) perform an unauthorized autopsy; (2) inadvertently dispose of the decedent’s remains; or (3) fail to notify plaintiffs of the decedent’s death. However, the examples illustrated by the court in Melfi as to what constitutes interference are not exhaustive. A triable issue of fact as to whether defendant Hospital interfered with plaintiffs’ immediate right to possession of the decedent’s body when it released the decedent’s body to Owens Funeral Home remains outstanding. In addition, defendant Hospital’s reliance on Public Health Law § 4201 (6) *450 is misplaced. The statute only applies to natural persons and cemetery organizations, businesses operating crematories, funeral directors, undertakers, embalmers, and funeral firms. Hospitals are offered no protection under the statute and acting reasonably and in good faith does not insulate defendant Hospital from liability.
Accordingly, defendant Hospital’s motion for summary judgment is granted as to plaintiffs’ statutory claim only. Plaintiffs’ cross motion for summary judgment is denied.